# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY<br><br>                          Plaintiff,<br><br>      - against -<br><br>PF HOLDINGS LLC,<br><br>                          Defendant. | Civil Action No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Great American Insurance Company ("Plaintiff"), by its attorneys, Mound Cotton Wollan & Greengrass LLP, by way of Complaint against Defendant PF Holdings LLC ("Defendant") alleges:

## THE PARTIES

1. Plaintiff is incorporated in and maintains a principal place of business in Ohio.

2. Upon information and belief, Defendant maintains a principal place of business at 10 Hill Street, Newark, New Jersey 07102.

## JURISDICTION AND VENUE

3. Jurisdiction is proper based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as Plaintiff and Defendant are from different states, and the amount in controversy is greater than $75,000 as the loss at issue has been assessed by Defendant at greater than $75,000 and/or Defendant has sought insurance coverage in an amount greater than $75,000.

4. Venue is proper pursuant to 28 U.S.C. § 1391 as Defendant is a resident of New Jersey and the insurance policy-at-issue is a New Jersey policy.

**FACTUAL BACKGROUND**

A. **The Policy**

5. Plaintiff issued a policy of insurance, given policy number MAC E600543 02, effective June 30, 2022 to June 30, 2023, (the "Policy") to first named insured Defendant. *See* Exhibit A.

6. The Policy contains various terms, conditions, exclusions, deductibles, limits and sublimits. *See* Exhibit A.

7. The Policy was delivered to Defendant in New Jersey.

8. Upon information and belief, invoices for payment of premiums were sent or forwarded to Defendant at 10 Hill Street, Newark, New Jersey 07102.

9. Defendant in New Jersey directed Plaintiff to work with Paxe Latitude LP, who upon information and belief is located at 139 Ocean Avenue, Lakewood, New Jersey 08701, on claim handling and investigation.

10. The Policy also contains provisions relative to New Jersey, including, for example, a New Jersey Earthquake Insurance Availability Notice; a New Jersey Changes Endorsement; a New Jersey Changes – Cancellation and Nonrenewal Endorsement; a Select Business Policy New Jersey – Marijuana Exclusion Endorsement; and a New Jersey – Limited Coverage for "Fungus," Wet Rot, Dry Rot and Bacteria Endorsement.

11. The Policy provides in the Select Business Policy Schedule of Additional Property Locations that "insurance is provided only for those coverages for which a Limit of Insurance has been insured" at various locations in various states and the subject buildings are located at:   521 Sawyer Boulevard, Columbus, Ohio 43203 (Location No. 26); 525 Sawyer

Boulevard, Columbus, Ohio 43203 (Location No. 27); and 529 Sawyer Boulevard, Columbus, Ohio 43203 (Location No. 28) (collectively, the "Properties").

12. The 521 and 529 Sawyer Boulevard buildings each have a building replacement cost limit of insurance of $28,176,057, and business income and extra expense limit of insurance of $1,999,200.

13. The 525 Sawyer Boulevard building has a building replacement cost limit of insurance of $1,032.000, and business income and extra expense limit of insurance of $25,000.

14. Pursuant to the Named Insured Endorsement, the Policy provides that Paxe Latitude LP and Latitude Five25 are additional entities insured under the Policy.

15. Pursuant to the Additional Named Insured and/or Additional Insured Endorsement, the Policy provides:

> In addition to the first Named Insured shown in the Declarations, the list of Named Insureds, Additional Named Insureds and/or Additional Insureds provided under this Policy with a legal insurable interest in Covered Property are added as insured, however, with respect to "loss" to Covered Property, we will:
>
> a. Adjust a claim for "loss" with the first Named Insured only; and
>
> b. Pay any "loss" to the first Named Insured only, for the benefit of any Named Insureds, Additional Named Insureds and/or Additional Insureds with legal insurable interest in the Covered Property.  If there are entities named as loss payees, mortgagees or lender's loss payables under the policy by endorsement, payments with regard to their legal insurable interest will be subject to the terms and conditions of the policy.
>
> This endorsement does not change or alter any policy provision allowing us the option to adjust losses with the owners of lost or damaged property or make payments to such owners which will satisfy any of your claims against us for the owner's property.

3

16. The Policy provides in the Select Business Policy Building and Personal Property Coverage Form that "we will pay for direct physical loss of or damage to Covered Property shown in the Declarations caused by or resulting from any Covered Cause of Loss." "Covered Causes of Loss means Risks of Direct Physical Loss unless loss is: (1) excluded in Section C. Exclusions; or (2) limited in Section D. Limitations; that follow." *See* Exhibit A.

17. To the extent there is direct physical loss of or damage to Covered Property caused by or resulting from any Covered Cause of Loss, the Policy provides in the Select Business Policy Conditions:

> **Loss Conditions**
>
> \* \* \*
>
> **D. Loss Payment**
>
> > **1.** In the event of direct physical loss or damage covered by this Coverage Part, at our option, we will either:
> >
> > > **a.** pay the value of lost or damaged property;
> > >
> > > **b.** pay the cost of repairing or replacing the lost or damaged property, subject to **2.** below;
> > >
> > > **c.** take all or any part of the property at an agreed or appraised value; or
> > >
> > > d. repair, rebuild or replace the property with other property of like kind and quality subject to **2.** below.
> >
> > We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Part or any applicable provision which amends ore supersedes the Valuation Condition.
> >
> > **2.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, sue or repair of any property.
> >
> > **3.** The amount of Business Income loss will be determined based on:

**a.** the Net Income of the business before the direct physical loss or damage occurred;

**b.** the likely Net Income of the business if no physical loss or damage occurred but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**c.** the operating expenses, including pay-roll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

**d.** other relevant sources of information, including:

    **(1)** your financial records and accounting procedures;

    **(2)** bills, invoices and other vouchers; and

    **(3)** deeds, liens, or contracts.

**4.** The amount of Extra Expense will be determined based on:

**a.** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred.  We will deduct from the total of such expenses:

    **(1)** the salvage value that remains of any property brought for temporary use during the 'period of restoration," once "operations" are resumed; and

    **(2)** any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**b.** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

* * *

**6.** We will not pay you more than your financial interest in the Covered Property.

>> **7.** We may adjust losses with the owners of the lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owner's property. We will not pay the owners more than their financial interest in the Covered Property.

* * *

*See* Exhibit A.

> 18. The Policy also provides in the Select Business Policy Conditions:

>> **H. Valuation**

>> **1.** If actual cash value is indicated in the Declarations as the method of valuation we will determine the value of Covered Property in the event of loss or damage as follows:

>>> **a.** At actual cash value as of the time of loss or damage except as provided in **b.** through **g.** below.

* * *

>> **2.** If replacement cost is indicated in the Declarations as the method of valuation we will determine the value of Covered Property in the event of loss or damage as follows:

>>> **a.** At replacement cost (without deduction for depreciation) as of the time of loss or damage except as provided in **b.** through **l.** below:

* * *

>>> **i.** We will not pay on a replacement cost basis for any loss or damage:

>>>> **(1)** until the lost or damaged property is actually repaired or replaced;
>>>> and
>>>> **(2)** unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

>>> **j.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3)** subject to **k.** below:

6

> > **(1)** the Limit of Insurance applicable to the lost or damaged property;
> > **(2)** the cost to replace, the lost or damaged property with other property:
> >
> > > **(a)** of comparable material and quality; and
> > > **(b)** used for the same purpose;
> >
> > or
> > **(3)** the amount actually spent that is necessary to repair or replace the lost or damaged property.
>
> If a building is rebuilt at a new location, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original location.
>
> **k.** The cost of repair or replacement does not include any increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.
>
> * * *

*See* Exhibit A.

### B. The Properties

19. The Properties are 395-unit apartment complexes consisting of two 15-story apartment towers and a single-story leasing/management building.

20. The Properties were constructed in or about 1963.

21. The Properties were first occupied by families in June 1965.

22. In early 1966, families residing at the Properties began experiencing issues with elevators, fires, vandalism, maintenance, loitering, and the like.

23. In August 1970, the Properties were converted from family living units to senior citizen living units.

24. Starting in 1986, individuals with mental illnesses moved into the Properties.

25. In 2009, the Columbus Metropolitan Housing Authority ("CMHA") considered razing the Properties because of the high-level of physical deterioration and functional obsolescence.

26. Instead, CMHA sold the Properties to VTT Skyview Towers LLC for $2 million on October 29, 2009.

27. On February 19, 2016, the Properties were sold again, this time to Skyview Apartment Towers LLC, for $14,112,000.

28. On October 20, 2021, the Properties were transferred to Paxe Latitude 1 LLC after being marketed with no list price and having multiple offers.

29. Also on October 20, 2021, Paxe Latitude 1 LLC sold the Properties for $17 million to Paxe Latitude LP, with both Paxe Latitude 1 LLC and Paxe Latitude LP having the same address.

30. Defendant acted as the management company for Paxe Latitude LP.

31. As the management company for Paxe Latitude LP, Defendant's responsibilities included overseeing the day-to-day operations of the Properties and ensuring that the Properties are well-maintained.

32. From 2020 through 2022, there were over 1,000 calls to police for overdoses, stabbings, fights, shootings, and the like at the Properties.

33. On January 28, 2022, the Columbus City Attorney's Office filed a lawsuit in the Environmental Court for the remediation of needed structural repairs at the Properties.

34. On December 2, 2022, a Purchase and Sale Agreement was entered into between Paxe Latitude LP and North Creek Apartments, LLC, with a purchase price of $16.5 million.

35. On December 24, 2022, only one of three boilers were operable at the Properties and, without heat, water pipes burst on Christmas Eve (the "Loss").

36. On December 24, 2022, the Properties then had no potable water, electricity, or fire suppression, and only one working elevator.

37. Upon information and belief, All Dry 24/7 was hired to assist with remediation and/or drying efforts following the Loss.

38. During the course of its remediation and/or drying efforts, All Dry 24/7 mishandled asbestos and/or asbestos containing materials at the Properties.

39. The Properties were then shut down by the City of Columbus and Environmental Protection Agency ("EPA") due to the need for asbestos decontamination that was triggered by poor remediation or drying work performed by All Dry 24/7.

40. All parties agree that because of its mishandling of asbestos and/or asbestos containing materials from its poor remediation or drying work, All Dry 24/7 is not entitled to payment for its work at the Properties.

41. The Columbus City Attorney's Office condemned the Properties and tenants were forced to evacuate.

42. As of December 24, 2022, prior to the evacuation, the Properties were only 39.29% occupied.

43. The Properties were operating at a loss, i.e., were not generating profit, as of December 24, 2022.

44. On February 20, 2023, Paxe Latitude LP was fined $4.3 million for contempt by the City of Columbus, Ohio regarding the Properties.

45. Paxe Latitude LP was also ordered to pay $1.5 million in restitution to the tenants of the Properties.

46. On February 20, 2023, Paxe Latitude LP sought relief by filing a Chapter 11 bankruptcy proceeding in the U.S. Bankruptcy Court for the District of New Jersey, under Bankruptcy Petition # 23-11337-CMG.

47. On September 1, 2023, the Hon. Christine M. Gravelle of the U.S. Bankruptcy Court for the District of New Jersey found that demonstrable cause was presented "for dismissal of the Chapter 11 Case based on, without limitation, (i) the fact that the Debtor's [Paxe Latitude LP] bankruptcy petition was filed without requisite legal authority, (ii) a substantial or continuing loss to or diminution of the Debtor's estate and the absence of a reasonable likelihood of rehabilitation, and (iii) the Debtor's gross mismanagement of its estate, including the Debtor's ongoing violations of Ohio and City of Columbus, Ohio laws" and dismissed for cause the Chapter 11 Case.

48. On September 11, 2023, the Properties went into a court-appointed receivership with New Perspective Asset Management LLC ("NPAM") acting as the receiver.

49. On November 2, 2023, the Horner Appraisal Group, Inc. issued an appraisal and analysis report opining that the diminution of market value of the lease fee estate as a result of the loss is $11.3 million.

50. In that report, the Horner Appraisal Group determined that the Properties' market value on December 24, 2022 (the day before the loss) was $17 million, comprising of the land value of $2,852,000, and improvements value of $14,148,800.

51. Also in that report, the Horner Appraisal Group determined that the Properties' market value on December 26, 2022 (the day after the loss) was $5.7 million, comprising of the land value of $2,852,000, and improvements value of $2,848,000.

52. In issuing its report, the Horner Appraisal Group considered a CBRE Report contained within the receiver's files, which reflects a value of $5.7 million as of March 9, 2023 for the Properties, and a Colliers International Report contained within the receiver's files, which reflects a value of $8 million as of May 8, 2023 for the Properties.

53. In 2023, the tax assessment value history for the Properties is $4,778,000 at market value, with the land market valued as $1,087,200, and improvements market valued at $3,690,800.

54. Prior to the Loss, the tax assessment value history for the Properties was $17,001,600.

55. Upon information and belief, Paxe Latitude LP retained Sam Koon Appraisers to generate a report to reduce the tax assessment value of the Properties post-Loss.

56. On December 13, 2023, a Final Decree was issued by the U.S. Bankruptcy Court for the District of New Jersey, thereby resolving and concluded the Chapter 11 bankruptcy proceeding.

### C. The Claim

57. On January 12, 2023, Plaintiff received a first notice of a claim reportedly involved loss or losses at the Properties occurring on December 25, 2022, and involving water damage resulting from, at least in part, frozen plumbing at the Properties (the "Claim").

58. All Dry 24/7 was approximately a month into its demolition and debris removal work at the Properties when the Claim was reported to Plaintiff.

59. On February 16, 2023, Plaintiff issued a reservation of rights letter specifically and affirmatively notifying Defendant that potentially relevant terms and conditions of the Policy may affect the availability of coverage and reserving all available rights and defenses under the Policy and law.

60. Defendant has not repaired the Properties following the Loss.

61. Defendant has not made any efforts to continue its business at the Properties following the Loss.

62. As the Properties are not repaired, Defendant is entitled to the actual cash value ("ACV") of the damage to the Properties until the repairs are completed.

63. To date, Plaintiff has issued payments totaling no less than $18,459,640.25.

64. Plaintiff's payments were calculated using the broad evidence rule, and derived by averaging the Horner Appraisal Group's appraised value and a building/contracting consultant's can-do repair proposal at ACV.

65. Notwithstanding the appraised values, the value set forth in a contract of sale, and the assessed tax value of the Properties all being significantly lower, Defendant is making a claim for damage to the Properties from the Loss in excess of the amount paid by Plaintiff.

66. A dispute has arisen as to coverage under the Policy, mainly what amounts may be owed for the Claim under the Policy for property damage, business income, and extra expense.

67. Despite good faith efforts, Plaintiff has been unable to resolve the dispute as to the extent of coverage under the Policy.

68. Plaintiff now seeks a declaration and demands judgment in accordance with the terms and conditions of the Policy.

## COUNT I
### (Declaratory Judgment)

69. Plaintiff repeats, reiterates, and realleges its allegations contained in Paragraphs 1 through 68 herein.

70. An actual controversy exists between Plaintiff and Defendant, as the first Named Insured under the Policy, relating to their respective legal rights and obligations under the Policy regarding the Claim – mainly, the valuation of the Loss under the Policy.

71. The Policy and law provide that, to the extent there is coverage under the Policy for the loss, it is payable at ACV since the Properties have not been repaired.

72. The Policy and law provide that, to the extent there is coverage under the Policy for the loss, the broad evidence rule determines the ACV of the Loss to the Properties, which here considers the prior sales (whether completed or not), appraisals, and tax assessments, along with repair proposals, in determining the value of the Loss.

73. The Policy and law also provide that there is no Business Income loss as the Properties were operating at a loss with a low percentage of occupancy at the time of the loss, and Defendant ceased its business operations at the Properties.

74. The Policy and law further provide that there is no covered Extra Expense loss incurred since Defendant made no effort to continue its business operations at the Properties.

**WHEREFORE,** Plaintiff demands judgment pursuant to 28 U.S.C. § 2201 and/or N.J.S.A. 2A:16-51, et seq.:

(a) Declaration that, to the extent there is coverage under the Policy, the broad evidence rule applies to the valuation of the damage to the Properties;

(b) Declaration that there is no Business Income loss as the Properties were operating at a loss at the time of the loss;

(c) Declaration that there is no covered Extra Expense loss incurred; and

(d) Awarding Plaintiff whatever legal and equitable relief as it may be entitled, including costs and attorney's fees.

## CERTIFICATION AND CLOSING

Under Fed. R. Civ. P. 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

                                                    MOUND COTTON WOLLAN
                                                             & GREENGRASS LLP
                                                    *Attorneys for Plaintiff*
                                                   *Great American Insurance Company*

                                                   By    */s/ Kevin F. Buckley*
                                                             Kevin F. Buckley
                                                            Katharine Anne Lechleitner

Dated: March 27, 2024